Clinton A. **TURNER** and Juanita A. Turner, Plaintiffs,

v.

**LOW RENT HOUSING AGENCY OF the CITY OF DES MOINES,** Iowa, Appellant,

and

**B.B. Andersen Development Company, Inc.,** Appellee.

B.B. **ANDERSEN DEVELOPMENT COMPANY, INC.** and B.B. Andersen Construction Co., Inc., Third-Party Plaintiffs,

v.

R.G. **ELDER & SON COMPANY,** State Surety Company and Trossen Wright & Associates, Architects, Third-Party Defendants.

No. 84–1938.

Supreme Court of Iowa.

May 21, 1986.

Paul H. Rosenberg and Raymond Rosenberg of Rosenberg, Rosenberg & Reade, Des Moines, for appellant Low Rent Housing Agency of the City of Des Moines.

John A. Templer, Jr. and David J. Darrell of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for appellees B.B. Andersen Development Co., Inc. and B.B. Andersen Const. Co., Inc.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, SCHULTZ, and CARTER, JJ.

LARSON, Justice.

A fifty-unit low-rent housing facility was built in Des Moines in a cooperative effort by the Housing and Urban Development agency of the federal government (HUD) and the Low Rent Housing Agency of the City of Des Moines. B.B. Andersen Development Company, Inc. and B.B. Andersen Construction Company, Inc. (referred to collectively as Andersen) were employed to do the work.

A steep slope on the east side of the project became a problem and resulted in a lawsuit by the adjoining owners against several defendants, including HUD, Low Rent Housing, and Andersen. The case was removed to federal court, which dismissed the claim against HUD, and the case was returned to Polk County District Court.

The original suit had, by then, gathered several crossclaims, as the principals in the housing project asserted their respective claims against the others. All of the claims in the case were resolved prior to trial except a cross-claim by Andersen against Low Rent Housing. This cross-claim sought recovery of money held by Low Rent Housing as "retainage" (to secure the completion of specified items of construction) and to recover consequential damages claimed by Andersen as a result of Low Rent Housing's delay in payment for the construction. (The delay was caused, at least in part, by a dispute over a retaining wall which is at the center of this controversy.) The district court granted judgment for the contractor, Andersen, and Low Rent Housing appealed. We affirm in part, reverse in part and remand.

The first issue before us is the scope of our review. The original suit, by the adjoining neighbors, was an action for deprivation of light and air, an equitable action. This cross-claim by Andersen, which was filed in that action, was a claim for damages, ordinarily a law action. Low Rent Housing's defense to the cross-claim centered on a "settlement" agreement entered into by it and Andersen prior to final payment under the contract. Andersen di-

savows the settlement agreement and seeks to avoid it on the ground of economic duress. It agrees that an original action to rescind an agreement would be in equity but argues that the present case is a hybrid in which there are both law and equitable issues. It appears to suggest a mixed scope of review.

Because the case was originally tried in equity, and because the heart of the issues on appeal is whether or not the settlement agreement may be rescinded, we review it as an equity case, de novo.

It is undisputed that the original contract did not expressly require the construction of the retaining wall at issue here. The specifications incorporated in the contract, however, required that certain procedures be followed by Andersen in order to stabilize the bank. This included stripping of vegetation, "benching," and compaction of the soil. Crown vetch, a soil stabilizing plant, was to be planted on the slope.

During construction of the project, it became apparent that these procedures were not adequate to stabilize the soil. Low Rent Housing blamed Andersen, claiming it had failed to properly follow the contract specifications in regard to soil compaction.

The problem of the eroding east bank persisted and, as final settlement neared, the problem became critical. Andersen, which by then had over a million dollars coming to it, needed the money. It was in default on its bank loan, and it claims its bonding ability was in jeopardy. According to Andersen, it was imperative for it to obtain immediate payment.

An attorney for Andersen had proposed, at one point, that Low Rent Housing pay for the remainder of the project and leave the matter of the retaining wall to be litigated later. Low Rent Housing did not reject this proposed settlement. It did, however, propose another alternative: A written settlement agreement to resolve the "punch list" issues and the problem of the retaining wall. As part of this agreement, Andersen would construct the wall, and Low Rent Housing would pay an addi-

tional $12,000 on the contract to be applied toward the wall.

The settlement agreement was signed by the parties on March 31, 1977, and the contract proceeds (less a retainage for the punch list items and completion of the wall) was paid to Andersen. Andersen, however, did not build the retaining wall, and Low Rent Housing hired another contractor to build it.

Low Rent Housing did not initiate an action to enforce Andersen's compliance with the settlement agreement, despite Andersen's alleged breach. Low Rent Housing only raises the settlement agreement as a defense to Andersen's cross-claim for consequential damages. This is where Andersen's claim of economic duress comes in.

At early common law, a contract could be avoided on grounds of duress only if it could be shown that the duress amounted to a fear of loss of life or limb, mayhem, or imprisonment. 13 *Williston on Contracts* § 1601, at 649 (3rd ed. Jaeger 1970). The present rule is set out by the Restatement:

> If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim.

Restatement (Second) of Contracts § 175(1), at 475 (1981).

In the comment to this section, the draftsmen of the Restatement rule note that "[a] threat, even if improper, does not amount to duress if the victim has a reasonable alternative to succumbing and fails to take advantage of it." On the general principle of economic duress, *see* 13 *Williston on Contracts* § 1617, at 704; *Totem Marine Tug & Barge Inc. v. Alyeska Pipeline Service Co.*, 584 P.2d 15, 22–23 (Alaska 1978); Note, *Economic Duress After The Demise of Freewill Theory: A Proposed Tort Analysis*, 53 Iowa L.Rev. 892, 899 (1968).

As one court has noted,

> [u]nder this standard, duress exists where: (1) one party involuntarily accepted the terms of another, (2) circumstanc-

es permitted no other alternative, and (3) such circumstances were the result of coercive acts of the other party.

*Totem Marine,* 584 P.2d at 21.

We believe this statement from an eighth circuit case is appropriate here because of Andersen's claim of financial emergency:

"In order to substantiate the allegation of economic duress or business compulsion, the plaintiff must go beyond the mere showing of a reluctance to accept and of financial embarassment. There must be a showing of acts on the part of the defendant which produced these two factors. The assertion of duress must be proven by evidence that the duress resulted from defendant's wrongful and oppressive conduct *and not by plaintiff's necessities.*"

*W.R. Grimshaw Co. v. Nevil C. Withrow Co.,* 248 F.2d 896, 904 (8th Cir.1957) (emphasis added).

 Although Andersen readily admits executing the settlement agreement, it now says it never intended to abide by it. It says this was the only means it had of avoiding bankruptcy, and it was therefore coerced into the settlement. We reject this contention. First, an alleged victim of duress may not obtain part of the benefits of an agreement and disavow the rest. *IMO Development Corp. v. Dow Corning Corp.,* 135 Cal.App.3d 451, 458, 185 Cal. Rptr. 341, 345 (1982). Here, Andersen received the benefits of the $12,000 additional consideration paid by Low Rent Housing under the settlement agreement.

More important, Andersen has not shown this was the only reasonable alternative available to it. It knew months before the completion date that there was going to be a problem over the retaining wall. It could have pursued the remedy originally suggested by its attorney, which was to settle on the rest of the contract and then litigate the matter of the retaining wall. If that would not sell with HUD, as Andersen claims, (HUD had considerable control over the project) Andersen might have sued on the contract or brought a declaratory judgment action. There were, no doubt, other alternatives which could have been investigated. Allowing the matter to be prolonged until the eleventh hour, then claiming a crisis because of its own financial necessities, does not amount to economic duress. *See Grimshaw,* 248 F.2d at 904.

The court erred in failing to give effect to the settlement agreement. We reverse the judgment insofar as it grants Andersen's claim for consequential damages. We affirm it insofar as it orders Low Rent Housing to pay for the punch list items. (Low Rent Housing concedes on appeal that it should pay for these.) We therefore affirm in part and reverse in part, remanding for entry of judgment in accordance with this opinion. Costs are taxed one-half to Andersen and one-half to Low Rent Housing.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.