**Kenneth Albert FEES, Jr.; Janet Elaine Fees; and Kenneth Albert Fees, Jr., As Father and Next Friend to Jesse Daniel Fees and April Dawn Fees, Appellants,**

v.

**MUTUAL FIRE AND AUTOMOBILE INSURANCE COMPANY, Dave Temple Insurance Services, and John Woodland, Appellees.**

No. 91–919.

Supreme Court of Iowa.

Sept. 23, 1992.

---

Patrick B. Chambers, Webster City, for appellants.

Jack W. Rogers, Des Moines, for appellee Mut. Fire & Auto. Ins. Co.

Bruce P. Bickel, Ames, for appellee Dave Temple Ins. Services.

Mark D. Aljets and Michael E. Marshall of Smith, Schneider, Stiles, Mumford, Schrage, Zurek, Wimer & Hudson, P.C., Des Moines, for appellee John Woodland.

David L. Phipps of Whitfield, Musgrave & Eddy, Des Moines, for amicus curiae Iowa Defense Counsel Ass'n.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, NEUMAN and ANDREASEN, JJ.

ANDREASEN, Justice.

The plaintiffs, Kenneth Albert Fees, Jr., individually, and as father and next of friend for his two children, and Janet Elaine Fees, his wife, filed their petition on April 2, 1990. They claimed damages based upon breach of contract, bad-faith failure to settle, misrepresentation, slander, and intentional infliction of emotional distress. The petition named as defendants Mutual Fire and Automobile Insurance Company, the insurer; David Temple Insurance Services, an agency of the insurer; and John Woodland, a fire investigator employed by the insurer. The petition alleged the plaintiffs had purchased a homeowners policy issued by the insurer providing coverage for their home in Jewell, Iowa, and that their claims for loss resulting from a fire that occurred on April 1, 1988, were not paid. In their answers to the petition, the defendants alleged the plaintiffs had settled the disputed fire loss claims and had executed a release of all claims.

The defendants filed motions for summary judgments. The motions were submitted to the court at hearing on May 17, 1991. Upon review of the record, the court concluded the plaintiffs had executed a valid release of their claims. The court found there was no coercion, duress, or fraud as a matter of law and that the plaintiffs were estopped from maintaining their claims.

Summary judgments were entered against the plaintiffs.

The plaintiffs' appeal from the judgments was transferred to the court of appeals. *See* Iowa R.App.P. 401. In a divided opinion (2–1), the court of appeals reversed the summary judgments. The majority concluded the release and settlement would be invalid if procured as a result of economic duress. Finding the record presented a genuine issue of fact concerning the existence of economic duress, the court of appeals reversed the summary judgments. Upon application of all defendants, we granted further review. *See* Iowa R.App.P. 402. We now vacate the decision of the court of appeals and affirm the judgments of the district court.

I. *Summary Judgment.*

 Summary judgment is proper only when the entire record before the court shows there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). The requirement of a "genuine" issue of fact means the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Hike v. Hall*, 427 N.W.2d 158, 159 (Iowa 1988). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit, given the applicable governing law. *Id.* In deciding whether the defendants' summary judgment motions should have been granted, "we must determine whether any facts have been presented over which a reasonable difference of opinion could exist that would affect the outcome of a case." *Behr v. Meredith Corp.*, 414 N.W.2d 339, 341 (Iowa 1987). We must review the record made in support of and in resistance to the motion to determine whether summary judgment was properly granted. *Hoefer v. Wisconsin Educ. Ass'n Ins. Trust*, 470 N.W.2d 336, 339 (Iowa 1991).

The record includes the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits. Iowa R.Civ.P. 237(c). The court may

**58**

permit affidavits to be supplemented by oral testimony. Iowa R.Civ.P. 237(e). Here, the court permitted Fees to supplement the affidavit of Kenneth Fees with his sworn testimony. His testimony is a part of the record.

Counsel for the plaintiffs concede the plaintiffs have no case if the release is binding. As stated by counsel, "if the release stands, the summary judgment is correct."

## II. Settlements.

Settlement agreements are basically contracts, and in reviewing them, we turn to the general principles of contract interpretation. *Waechter v. Aluminum Co.*, 454 N.W.2d 565, 568 (Iowa 1990). The law favors settlement of controversies and, accordingly, "we have long held that voluntary settlements of legal disputes should be encouraged, with the terms of settlement not inordinately scrutinized." *Wright v. Scott*, 410 N.W.2d 247, 249 (Iowa 1987). The typical settlement resolves uncertain claims and defenses, and the settlement avoids the need for further legal proceedings. *Id.*

Fees admit they executed a "policy release and release of all claims" and received $43,257.92 from Mutual Fire. The release is clear and unequivocal. It recites Fees accept the payment as the compromise and final settlement of disputed claims. It releases Mutual Fire and its agents and others from all liability for claims under the insurance policy or claims arising out of the fire loss.

## III. Economic Duress.

A contract is voidable by the victim "if the party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative." Restatement (Second) of Contracts § 175(1), at 475 (1981). Based upon this standard, we have recognized a release or settlement agreement may be invalid by reason of economic duress. *Turner v. Low Rent Hous. Agency*, 387 N.W.2d 596 (Iowa 1986). Economic duress can serve as a basis for invalidating a release when the releasor involuntarily accepted the terms of the release, the circumstances allowed only that alternative, and such circumstances were the results of the coercive acts of the releasee. *Id.* at 598–99. The releasor must establish that the duress resulted from the releasee's wrongful oppressive conduct and not by the releasor's necessities. *Id.*

Obviously, the burden of proving economic duress is upon the party alleging it. Any defense that a contract or writing sued on is void or voidable, or which admits the facts of the adverse pleading but seeks to avoid their legal effect, must be specially pleaded. Iowa R.Civ.P. 101. Generally, it is necessary that a party plead and present facts in support of an affirmative defense urged by the party to show that there is an issue of fact in a summary judgment proceeding. *Graham v. Kuker*, 246 N.W.2d 290, 292 (Iowa 1976). *See also Waechter*, 454 N.W.2d at 569 (failure to raise issue of economic duress in district court will prohibit consideration of the issue on appeal).

Here, the defendants urged in district court that the plaintiffs had not raised economic duress as an affirmative defense. The plaintiffs alleged in their petition that Mutual Fire had refused to provide recovery for loss sustained as a result of the fire and forced them to accept less than the amount due under the policy. The plaintiffs further alleged Woodland, individually and as agent for Mutual Fire, had accused them of committing arson, causing them to accept less than the amount of the policy coverage. They also alleged these actions were malicious, made in bad faith, and for the purpose of intimidating the plaintiffs. The district court concluded that the pleadings, including the motions for summary judgments and the resistances, raised the defense of economic duress. While we seriously question whether this defense had been properly raised in the pleadings, we recognize the issue was considered by the court, and we will therefore address it.

It is undisputed in the record that in November 1985 Fees purchased on contract their house in Jewell for $12,000. In Janu-

ary 1987, Fees voluntarily petitioned for bankruptcy. On their schedule of assets they valued their interest in their home at $12,000, their personal property at $1516, and their wearing apparel at $1060. Fees purchased their homeowners policy with Mutual Fire in July 1987. The policy provided limits of $35,000 on dwelling, $25,000 personal property, and $7000 loss-of-use coverage. The policy provided for replacement coverage. The dwelling and its contents were destroyed by fire on April 1, 1988, while Fees were out of town.

The fire was investigated by the state fire marshal's office. The investigator concluded "it would appear there was electrical failure of the fire [sic] that in turn caused the ignition of the insulation material of the wire and then to other combustible materials standing in the stairway." On April 6, 1988, Mutual Fire retained Woodland to investigate the fire scene. He investigated the scene and reported to the insurer. His final report was completed on July 5, 1988. He concluded the fire was incendiary in nature and not accidently caused.

Fees employed attorney Charles Deppe to assist them with their fire insurance claim. The proof of loss sent by Fees to the insurer was rejected. In a letter to attorney Deppe dated July 26, 1988, the insurer requested detailed information as to the personal property claim. A complete statement of the purchase cost and current value of the items lost in the fire was requested. The letter stated Mutual Fire was willing to reconsider its previous offer of compromise if the additional information was furnished. The letter also expressed concerns arising from the investigator's report that the fire was incendiary in nature and that Fees had admitted under oath that they deliberately left out personal property items in their bankruptcy schedules.

On August 17, 1988, attorney Deppe submitted a settlement offer of $45,638.41. A counter offer was made by Mutual Fire. This offer was accepted by Fees and the release was signed on September 3, 1988. Fees received the settlement amount of $43,257.92. On April 2, 1990, two years after the fire and approximately nineteen months after execution of the release, Fees commenced this suit for damages.

The plaintiffs, in support of their claim of economic duress, argue that at the time of the fire, Kenneth Fees was marginally employed, had recently been through bankruptcy, and had no liquid assets nor any other source of funds with which to replace his home, furniture, or personal belongings. Because he did not have the financial resources with which to provide reasonable shelter for himself and his two children, they lived in a tent for more than three months in the summer of 1988. He was told by his attorney that litigation over the claim could take years. Fees suggests that because of the threats of an arson charge, possible perjury problems in bankruptcy, and his dire economic needs, he had signed the release and accepted the settlement offer.

Under the Restatement standard, courts have identified the elements of economic duress to include: (1) one party involuntarily accepted the terms of another, (2) circumstances permitted no other alternative, and (3) such circumstances were the result of coercive acts of the other party. *Turner*, 387 N.W.2d at 598–99.

■ To satisfy the first element of economic duress, the record must show that Fees had involuntarily executed the release. Kenneth Fees had an associate art degree in sociology and three additional years college education in human relations. He was trained and employed as a health and life insurance salesman at the time of the fire. It is clear Fees understood their rights at the time of executing the release. The terms of the release were not ambiguous. They understood the release was a full and final settlement of the claims. Prior to and during the settlement negotiations, Fees talked with their attorney who acted on their behalf. Substantial consideration was paid to Fees. The final settlement amount was nearly the amount proposed by Fees. They had ample time to consider and to discuss with their attorney Mutual Fire's offer of settlement before accepting it. Under these circumstances,

the plaintiffs have failed to generate a fact issue upon the first element of economic duress as a matter of law.

 To satisfy the second element of economic duress, plaintiffs must show they had no reasonable alternative under the circumstances. The defendants urge the plaintiffs could have maintained a lawsuit to resolve their claim. The second element of economic duress is a practical one under which we take in the exigencies of the victim, and the mere availability of a legal remedy is not controlling if it will not afford effective relief to one in the victim's circumstances. Restatement § 175, comment b, at 476. We find there is a genuine issue as to the facts upon this element.

 To satisfy the third element, the record must show the plaintiffs' financial troubles were the result of the defendants' wrongful or coercive acts. Fees were experiencing financial difficulties before the fire destroyed their home. They urge their economic problems were the results of the defendants' wrongful and coercive acts. They claim the defendants wrongfully accused them of committing arson and perjury in their bankruptcy proceeding. Even though these acts are in the record, there is no showing that the acts caused or contributed to the plaintiffs' economic troubles.

Although plaintiffs claim the defendants' failure to settle left them homeless, it is admitted by the plaintiffs that Mutual Fire provided $1000 for loss of use prior to settlement. There is no inference of wrongful conduct by reason of the insurer's initial investigation having taken more than two months to complete. Nor does the insurer commit a wrongful act when it exercises its right to insist upon satisfactory proof of the fire claim. The plaintiffs failed to generate a fact issue upon the third element of economic duress.

Because Fees were required to show there was a material fact issue as to all three elements of their economic duress defense and they failed to do so, we find the trial court correctly held the release was valid and constituted a complete defense to the plaintiffs' claim. Summary judgments were properly entered by the district court.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENTS AFFIRMED.