## IN THE COURT OF APPEALS OF IOWA

No. 22-0801
Filed February 22, 2023

**DAVID ALAN SCHMITZ,**
        Plaintiff-Appellant,

**vs.**

**NEVADA COMMUNITY SCHOOL DISTRICT and DR. STEVE GRAY, SUPERINTENDENT,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Story County, Amy M. Moore, Judge.


        A former school district employee appeals the district court's dismissal of his whistleblower claim.  **AFFIRMED.**


        Kellie L. Paschke and Kelly Verwers Meyers of Skinner & Paschke, PLLC, West Des Moines, for appellant.

        Benjamin P. Roach and Haley Y. Hermanson of Nyemaster Goode, P.C., Des Moines, for appellees.


        Considered by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

David Schmitz appeals the dismissal of his claim for violation of Iowa's whistleblower statute, codified at Iowa Code section 70A.29 (2019). The district court granted a motion for summary judgment filed by the defendants: the Nevada Community School District and its superintendent, Dr. Steve Gray. Schmitz contends summary judgment was improper because there were genuine issues of material fact as to the validity of the parties' separation agreement and the reasons for his termination. Finding the separation agreement was valid and enforceable, we affirm the district court's order.

## I. Background Facts and Proceedings.

The school district hired Schmitz to serve as its food service director in July 2014. Schmitz's responsibilities involved menu planning, food ordering, inventory, supervising employees, and meeting the budget set for the district's nutrition department. While Schmitz inherited a deficit in the nutrition fund budget, the parties dispute whether that deficit worsened during his tenure.

In October 2016, Dr. Gray met with Schmitz and sent a follow-up letter detailing his concerns with the increasing budget deficit. Schmitz's performance evaluation for the 2016–17 school year also indicated that corrective action on the budget deficit was needed. In a December 2017 meeting, Schmitz committed to cutting $168,000 from the 2019 fiscal year budget. Schmitz's 2017–18 performance evaluation indicated concerns not only with the budget, but also with the overall morale of food service staff regarding Schmitz's leadership.

In October 2018, the district received an anonymous tip alleging Schmitz had been stealing from the food services program for over two years. The district

contacted the Nevada Police Department for investigation. The state auditor's office also became involved due to the potential theft of public goods. The auditor's office found that it could not determine whether any items were improperly removed or if collections were not properly deposited because inadequate records were maintained. As a result, the police department determined it would probably not be able to prove theft beyond a reasonable doubt and closed its case in November 2019.

While the theft investigation was still ongoing, Dr. Gray and the school board met in February 2019 to discuss the nutrition fund deficit and need for new leadership in the food service department. Despite the overall budget deficit, there was progress being made with a nearly $40,000 surplus incurred during the 2017–18 school year. However, on March 1, Dr. Gray informed Schmitz of the district's decision to terminate his employment and presented him with a letter outlining his options: (1) allow the letter to serve as two weeks' notice of his termination, pending a vote by the school board at its next meeting on March 11, or (2) accept a separation agreement and be placed on paid administrative leave through the remainder of his current contract (through June 30, 2019). The district maintains that it opted not to wait until the end of Schmitz's current contract because it wished to participate in the most common hiring time for school employees and use those final months of the school year to transition leadership.

Schmitz signed and returned the separation agreement on Monday, March 4, thereby releasing any claims he might have against the district or its employees arising out of his employment. Schmitz was represented by an attorney during the theft investigation but did not seek out any legal counsel prior to signing the

agreement. He received his salary and benefits through the remaining four months of his term.

On October 6, 2020, Schmitz filed a petition against the district and Dr. Gray, alleging (1) wrongful termination in violation of public policy, (2) violation of Iowa's whistleblower statute, codified at Iowa Code section 70A.29, and (3) defamation. The defendants filed a motion for summary judgment in February 2022. The parties agreed to an unreported hearing, after which the district court granted summary judgment on all three counts and dismissed Schmitz's petition in its entirety. Schmitz timely appeals the ruling only as to the second count—that of his statutory claim for whistleblower protection.

## II. Review.

We review the district court's ruling on the defendants' motion for summary judgment for correction of errors at law. *Wermerskirchen v. Canadian Nat'l R.R.*, 955 N.W.2d 822, 827 (Iowa 2021). We view the facts in the light most favorable to the nonmoving party, and

> [t]he burden is on the moving party to demonstrate the nonexistence of a material fact question. However, the nonmoving party may not rely on mere allegations in the pleadings but must set forth specific facts showing a genuine issue for trial. If the nonmoving party cannot generate a prima facie case in the summary judgment record, the moving party is entitled to judgment as a matter of law.

*Id.* (citation omitted). "The requirement of a 'genuine' issue of fact means the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fees v. Mut. Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992) (citation omitted). "An issue of fact is 'material' only when the dispute is over facts that

might affect the outcome of the suit, given the applicable governing law." *Id.* (citation omitted).

### III. Discussion.

Schmitz argues his separation agreement is voidable because he executed it under economic duress. *See id.* at 58 ("A contract is voidable by the victim 'if the party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative.'" (citation omitted)). If valid and enforceable, the unambiguous terms of the separation agreement fully release the school district and Dr. Gray from any and all claims arising from Schmitz's employment with the district, which would bar Schmitz's statutory claim for whistleblower protection.

"Economic duress can serve as a basis for invalidating a release when the releasor involuntarily accepted the terms of the release, the circumstances allowed only that alternative, and such circumstances were the results of the coercive acts of the releasee." *Id.* (citation omitted). As to the first element, Schmitz asserts his acceptance of the agreement was involuntary due to the parties' unequal bargaining power and the terms being one-sided, unreasonable, and oppressive. *See In re Marriage of Shanks*, 758 N.W.2d 506, 515 (Iowa 2008) (explaining in the context of unconscionability that "gross inequality of bargaining power, together with terms unreasonably favorable to the stronger party, . . . may show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms"). Schmitz points out the agreement forced him to (1) forfeit his available vacation, personal days, and sick leave, (2) forfeit all pay and benefits remaining under his contract if he obtained other employment

during its term, and (3) waive his right to seek unemployment benefits after the term concluded.[1]

However, Schmitz acknowledges that he read and understood the contract, did not seek to negotiate its terms or request additional time, and returned the agreement two days prior to its deadline.  Schmitz stated that he chose to return the agreement early and not attempt to contact an attorney because he knew he was going to sign it regardless in order to be paid.  Therefore, despite the short timeframe afforded, Schmitz's "state of mind upon signing the contract cannot be attributed to the defendants."  *Hosier v. Hosier*, No. 00-1225, 2001 WL 1451137, at *5 (Iowa Ct. App. Nov. 16, 2001).  Although we caution parties against providing minimal opportunity to consider an agreement and seek legal counsel, these particular circumstances do not support a finding that Schmitz's assent was involuntary.  *See Fees*, 490 N.W.2d at 59–60 (finding no fact issue generated on the voluntariness of an executed settlement agreement when the releasor understood its unambiguous terms, received substantial consideration, and consulted with an attorney); *State v. Baldon*, 829 N.W.2d 785, 801 (Iowa 2013)

---

[1] Schmitz asserts the requirement that he waive his right to seek unemployment benefits violates Iowa Code section 96.15 and thereby renders the contract void. Although true that section 96.15 voids "[a]ny agreement by an individual to waive, release, or commute the individual's rights to benefits or any other rights under this [unemployment compensation] chapter," Schmitz failed to secure a decision on this point before the district court.  He asserted this statutory violation only in passing to support his claim for economic duress but not to void the contract outright.  The district court did not address the validity of the contract in this context, and Schmitz filed no motion to reconsider and secure such a ruling.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").  Accordingly, we find this argument is not preserved for our review.

("We appreciate that the bargain under a contract can, at times, involve a choice between two unpalatable alternatives, which does not defeat the voluntariness of the consent.").

Schmitz furthermore admits that he chose the separation agreement over the alternative option to treat the letter as two weeks' notice of termination, pending a hearing before the school board. Whether accepting the letter as a notice of termination constituted a reasonable alternative may be answered by turning to the merits of Schmitz's whistleblower claim.[2] As the district court found, summary judgment is proper here because the record is devoid of any indication that Schmitz's termination by the school district was in any way related to his communication with the Iowa Department of Education. In fact, the email communications from the department, which were sent to Schmitz and copied Dr. Gray: (1) reference audit findings, (2) express thanks to Schmitz and Schaeffer for meeting to follow up on an administrative review of the National School Lunch Program, and (3) discuss a corrective action plan instituted based on incorrect charges discovered during the administrative review. The details of the corrective action plan do not suggest any accusations of wrongdoing but include steps to increase transparency from Schmitz and Schaeffer. Schmitz claims that he

---

[2] Although we opt to address the whistleblower claim here, we leave open the question of whether such a statutory violation, and the opportunity to pursue a legal remedy, could be a reasonable alternative in the context of economic duress. Here, accepting termination would have conferred Schmitz's contractually-obligated two-weeks' notice, and the record does not detail Schmitz's financial state. *See Fees*, 490 N.W.2d at 60 (noting that the question of reasonable alternatives "is a practical one under which we take in the exigencies of the victim, and the mere availability of a legal remedy is not controlling if it will not afford effective relief to one in the victim's circumstances").

reached out to the department first and met with representatives alone, but there is no evidence of such interaction, and Schmitz says he did not tell anyone else at the district about the meeting.

Although Schmitz claims he disclosed budget inaccuracies and financial mismanagement to the department, there is no record evidence to indicate the district or its employees knew or should have known that Schmitz's communications were anything more than regular communication pertaining to standard administrative procedure. Schmitz argues the district's belief as to why Schmitz was disclosing information is irrelevant and immaterial, but it is necessary to connect Schmitz's disclosure with a retaliatory action. Because this nexus is an essential element to the whistleblower statute, we affirm the district court's ruling in this regard. *See* Iowa Code § 70A.29 ("A person shall not discharge an employee . . . as a *reprisal* for a disclosure of any information . . . ." (emphasis added)). With that matter resolved, we cannot say there is a genuine dispute of material fact as to whether the circumstances allowed any other reasonable alternative.

Finally, "[t]o satisfy the third element, the record must show the plaintiffs' financial troubles were the result of the defendants' wrongful or coercive acts." *Fees*, 490 N.W.2d at 60. Since we have already addressed that the termination was not a violation of Iowa's whistleblower statute, and an employer exercising its right to terminate an employee on two weeks' notice is not a wrongful act, there is no need to consider whether the defendants' acts caused financial trouble for Schmitz. Accordingly, Schmitz has failed to demonstrate a fact issue on the third element of economic duress.

Because Schmitz needed to generate a material fact issue as to all three elements of economic duress and failed to do so, we find the district court properly held the settlement agreement was valid and constituted a complete defense to Schmitz's claim.

Although Schmitz failed to establish any element of economic duress, we note the agreement's enforceability is further supported by Schmitz's ratification. Schmitz accepted the benefits of the contract and filed suit over one year later without any interceding act to repudiate the agreement. *See Turner v. Low Rent Hous. Agency*, 387 N.W.2d 596, 599 (Iowa 1986) ("[A]n alleged victim of duress may not obtain part of the benefits of an agreement and disavow the rest."). "A party, who is entitled to avoid a contract on the ground of duress should repudiate it promptly after the duress has been removed." *Hosier*, 2001 WL 1451137, at *5 (citation omitted). "Silence and acquiescence for a considerable period thereafter, action in accord with it, and acceptance of benefits under it, amount to a ratification." *Id.* (citation omitted). No reasonable fact-finder could conclude that Schmitz timely repudiated the agreement. Because his actions amount to ratification, Schmitz waived any claim for economic duress he may have otherwise had. We affirm the ruling of the district court with respect to the validity of the separation agreement and do not reach the underlying whistleblower claim released by the parties' contract. *See Terry v. Dorothy*, 950 N.W.2d 246, 250–51 (Iowa 2020) (finding underlying claim extinguished by application of general contract principles to parties' settlement agreement).

**AFFIRMED.**