# IN THE COURT OF APPEALS OF IOWA

No. 23-0867
Filed September 18, 2024

LARRY L. HEISHMAN and JAMES D. HEISHMAN,
    Plaintiffs-Appellants,

vs.

FARM CREDIT SERVICES OF AMERICA, PCA,
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Poweshiek County, David Nelmark, Judge.

The plaintiffs appeal a grant of summary judgment in favor of the defendant. **AFFIRMED.**

John G. Daufeldt of John C. Wagner Law Offices, P.C., Amana, for appellants.

Thomas H. Burke, Johannes H. Moorlach, and Peter J. Chalik of Whitfield & Eddy Law, Des Moines, for appellee.

Heard by Greer, P.J., and Ahlers and Badding, JJ.

**AHLERS, Judge.**

Larry and James Heishman appeal a summary judgment ruling in favor of Farm Credit Services of America (FCSA).

## I.    Background Facts & Prior Proceedings

The Heishmans are a father and son farming duo who run farming operations in Iowa and Texas.  They have banked with FCSA for decades.  This action relates to events starting in March 2019, when the Heishmans were indebted on several loans with FCSA.  Some of those loans were due at that time.

Around March 6, 2019, the Heishmans and FCSA entered into an operating loan for a Texas farming operation.  The Heishmans pledged an additional 290 acres of land—land that was previously unencumbered—as collateral for the loan. In return, FCSA agreed to lend the Heishmans up to $2 million to cover operating expenses for their Texas farming operation.  FCSA advanced $793,870.23 to the Heishmans pursuant to the loan agreement.

A few weeks later, on March 29, FCSA presented the Heishmans with a proposed restructuring agreement (Restructure Agreement) to restructure all their outstanding debt with FCSA, including the $2 million note and then-due notes on other loans.

On April 19, the Heishmans entered into the Restructure Agreement along with new operating loans and loan agreements.  As a result, the Heishmans had access to additional credit with FCSA.  The Restructure Agreement included several provisions important to this case.  The first stated:

> The Heishman parties have been advised and given adequate
> opportunity to seek legal and tax counsel, advice and representation
> regarding this agreement and have either consulted with such

counsel or have knowingly and voluntarily refused or failed to do so. The Heishman parties are not relying on Lender, its representatives or agents for legal or tax advice. Any tax consequences associated with this agreement are the sole responsibility of the Heishman parties.

The next provision provided: "The Heishman parties have executed this agreement as a free and voluntary act, without any duress, coercion, or undue influence exerted by or on behalf of Lender or any other party." Finally, the Restructure Agreement included a release provision, which stated:

> Borrowers do hereby unconditionally release and discharge Lender and its successors, assigns, affiliates, subsidiaries, parents, officers, directors, employees, members, attorneys, and agents (collectively the "Released Parties"), from any and all liability, damages, losses, obligations, costs, expenses, suits, claims, demands, causes of action for damages or any other relief, whether or not known or suspected of any kind, nature, or character, at law or in equity, which borrowers now have or may have against any of the Released Parties hereunder, under the Loan Documents or otherwise, as of the Effective Date hereof, including, but not limited to, those relating to (i) usury or penalties or damages therefor, (ii) allegations that a partnership existed between Borrowers and the Released Parties, (iii) allegations of unconscionable acts, deceptive trade practices, lack of good faith or fair dealing, lack of commercial reasonableness or special relationships, such as fiduciary, trust, or confidential relationships, (iv) allegations of dominion, control, alter ego, instrumentality, fraud, real estate fraud, misrepresentation, duress, coercion, undue influence, interference, or negligence, (v) allegations of tortious interference with present or prospective business relationships or of violations of antitrust laws, (vi) allegations that any oral or other modification of all or any of the Loan Documents has previously been agreed to, (vii) allegations of slander, libel, or damage to reputation, or (viii) any lender liability claim of any type or fashion (the matters described in clauses (i) through (viii) being collectively referred to as the "Claims"), all of which Claims are hereby unconditionally waived and released.

Just over two years later, in May 2021, the Heishmans brought this action against FCSA relating to the events surrounding the $2 million operating loan. Specifically, the Heishmans alleged breach of contract, breach of good faith and

fair dealing, tortious interference with prospective business advantage, and fraudulent misrepresentation.

FCSA filed a motion for summary judgment contending, among other things, that the release contained in the Restructure Agreement waived all the Heishmans' claims. The Heishmans resisted, contending the release contained in the Restructure Agreement was not enforceable because they entered into the Restructure Agreement under economic duress. FCSA responded by arguing that the Heishmans could not establish the elements of economic duress and never repudiated the Restructure Agreement.

The matter came before the business specialty court in an unreported hearing.[1] The court agreed with FCSA that, based on the undisputed facts, the Heishmans could not establish they entered into the Restructure Agreement under economic duress and even if they could, they failed to repudiate the Restructure Agreement. Because the release contained in the Restructure Agreement waived all of the Heishmans' claims, the court granted the motion for summary judgment. The Heishmans filed an Iowa Rule of Civil Procedure 1.904 motion asking the court to reconsider and claiming that FCSA raised the issue of repudiation too late. While the court expanded its ruling, it still concluded that summary judgment was necessary. The Heishmans appeal.

---

[1] FSCA moved to transfer the case to the business specialty court and the Heishmans did not resist, so the case was transferred to the business specialty court. The court's order ruling on FCSA's motion for summary judgment notes a hearing was held on March 9, 2023. However, the court record contains no report from a court reporter, leading us to believe the hearing was unreported.

## II.    Scope and Standard of Review

Our review of a grant of summary judgment is for correction of errors at law. *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007).  "Summary judgment is appropriate only when the entire record demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.*; Iowa R. Civ. P. 1.981(3).  "The record on summary judgment includes the pleadings, depositions, affidavits, and exhibits presented."  *Stevens*, 728 N.W.2d at 827.  "We review the evidence in the light most favorable to the nonmoving party." *Id.*

## III.    Discussion

The parties agree that all the Heishmans' claims cannot move forward if the waiver contained in the Restructure Agreement is enforceable.  The Heishmans insist it is not enforceable because they entered into the Restructure Agreement under economic duress.  *See Fees v. Mut. Fire & Auto. Ins.*, 490 N.W.2d 55, 58 (Iowa 1992).

To establish economic duress, a party must establish three elements: "(1) one party involuntarily accepted the terms of another, (2) circumstances permitted no other alternative, and (3) such circumstances were the result of coercive acts of the other party." *Id.* at 59.  To survive a summary judgment motion, the party asserting economic duress must "show there was a material fact issue as to all three elements of their economic duress" claim.  *Id.* at 60.

We agree with the business specialty court that there is no question of material fact as to the first element—whether the Heishmans involuntarily accepted FCSA's terms in the Restructure Agreement.  *Id.* at 59.  To generate an issue of

material fact as to this element, the record must contain some evidence that the Heishmans "involuntarily executed the release." *Id.* It is undisputed that the Heishmans are experienced farmers who often entered into lending agreements in the course of that business. The terms of the Restructure Agreement are clear and unambiguous. The Heishmans sought legal counsel to assist them with the Restructure Agreement. And they considered the Restructure Agreement for three weeks before signing it. These undisputed facts establish that the Heishmans voluntarily entered into the Restructure Agreement and voluntarily accepted the terms of the agreement. *See id.* at 59–60 (concluding similar undisputed facts failed to generate a fact question as to the first element of economic duress); *see also Schmitz v. Nevada Comm. Sch. Dist.*, No. 22-0801, 2023 WL 2152614, at *3 (Iowa Ct. App. Feb. 22, 2023) (same); *Hosier v. Hosier ex rel. Estate of Hosier*, No. 00-1225, 2001 WL 151137, at *5 (Iowa Ct. App. Nov. 16, 2001) (same). While we understand that the Heishmans argue that FCSA timed its proposal of the Restructure Agreement for a period in the planting season that left them in a vulnerable position, that does not enter into our calculus. *See Turner v. Low Rent Hous. Agency of Des Moines*, 387 N.W.2d 596, 599 (Iowa 1986) ("The assertion of duress must be proven by evidence that the duress resulted from defendant's wrongful and oppressive conduct *and not by plaintiff's necessities*." (citation omitted)). As such, there is no question of material fact as to the first element, and the Heishmans cannot establish economic duress to avoid application of the waiver terms found in the Restructure Agreement.

Even if the Heishmans could establish economic duress, they failed to repudiate the Restructure Agreement once they were no longer subject to

economic duress. *See Anselmo v. Mfrs. Life Ins. Co.*, 771 F.2d 417, 420 (8th Cir. 1985) ("A party, who is entitled to avoid a contract on the ground of duress should repudiate it promptly after the duress has been removed." (citation omitted)). The Heishmans accepted the benefits of the Restructure Agreement for roughly two years before filing this action. Their inaction amounted to ratification of the Restructure Agreement. *See id.* ("Silence and acquiescence for a considerable period thereafter, action in accord with it, and acceptance of benefits under it, amount to a ratification." (citation omitted)). Moreover, the Heishmans cannot claim duress to disavow only a portion of the Restructure Agreement while reaping the benefits of the remaining terms of the contract, which included FCSA not initiating foreclosure proceedings and providing them with additional funding because of the Restructure Agreement. *See Turner*, 387 N.W.2d at 599 ("[A]n alleged victim of duress may not obtain part of the benefits of an agreement and disavow the rest.").

Still, the Heishmans argue that we cannot consider FCSA's "repudiation defense" because "[r]epudiation is an affirmative defense, . . . which must be specifically pled." But they misconstrue FCSA's reference to repudiation. FCSA is not attempting to repudiate the Restructure Agreement to avoid its enforcement. To the contrary, FCSA is attempting to enforce the Restructure Agreement and its waiver provision by noting that the Heishmans never repudiated the contract. That is not an affirmative defense. It does not require a special pleading. And FCSA is free to argue the Heishmans are bound by the terms of the Restructure Agreement because they never attempted to repudiate it for more than two years.

Ultimately, we find no question of material fact as to the Heishmans' claim of economic duress. As a result, the waiver contained in the Restructure Agreement is valid and forecloses the Heishmans' ability to bring this action against FCSA. We conclude the business specialty court correctly granted FCSA's motion for summary judgment.

**AFFIRMED.**