Filed 4/18/13  Savas v. Gerber CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PAT SAVAS, Individually and as Trustee, etc.,<br><br>      Plaintiff, Cross-defendant and Appellant,<br><br>v.<br><br>SOL GERBER and RUTH GERBER, as Trustees, etc., et al.,<br><br>      Defendants, Cross-complainants and Appellants. | B236101, B237539<br><br>(Los Angeles County<br>Super. Ct. No. BC399264) |

APPEALS from a judgment and an order of the Superior Court of Los Angeles County.  Yvette M. Palazuelos, Judge.  Affirmed.

Rosario Perry for Plaintiff, Cross-defendant and Appellant.

Marcus, Watanabe & Dave, David M. Marcus and Daniel J. Enowitz for Defendants, Cross-complainants and Appellants.

_____

In this case, two promissory notes, one for $500,000 and another for $300,000, were secured by one deed of trust on real property. When the trustor-debtor defaulted, the real property was sold under the power of sale in the deed of trust. In subsequent litigation over the ownership of the real property, the trial court ruled that each of the note holders were entitled to a five-eighths and three-eighths interest, respectively. On appeal, the five-eighths owners claim they were entitled to the entirety of the real property, arguing that the unraveling of a settlement of an earlier dispute to which they were not a party somehow deprived the three-eighths owner of its interest. We disagree because the earlier settlement had nothing to do with the rights of the five-eighths owners, who received the benefit of their bargain. They also argue that the interests of the three-eighths owner disappeared by virtue of the merger of title doctrine. We disagree because there was no merger of title as title of that interest was never held by the same parties. And as to the claim of the three-eighths owner for attorney fees, we conclude that the lack of an attorney fees provision in any contract between the three-eighths owner and the five-eighths owners defeats its claim. We affirm the judgment and the order denying attorney fees.

## BACKGROUND

### A. The complaint and cross-complaint

In 2009, Korinth Enterprises, Inc. (Korinth), and Patricia Savas, as trustee of the Pat Savas Family Trust (Savas Trust), filed a first amended complaint against Sol Gerber and Ruth Gerber, as trustees of the Gerber Family Trust, and Todd H. Kurtin and Jon R. Kurtin, as trustees of the Kurtin Family Trust (referred to collectively as Gerber Trust and Kurtin Trust), regarding real property located in Los Angeles (real property). Korinth's cause of action was for quiet title challenging a second deed of trust; Savas Trust's causes of action were for breach of contract and specific performance pertaining to notes secured by the second deed of trust.

Gerber Trust and Kurtin Trust filed a cross-complaint for quiet title, fraud, negligent misrepresentation, slander of title, unjust enrichment, declaratory relief, and equitable lien relating to the real property against Korinth, Savas Trust, Patricia

2

Savapoulos (Pat Savas), Thomas Savapoulos (Tom Savas), Athena Savas, Chris Savas, Daniel Kupper, and Mid City.

After a bench trial, the trial court entered judgment, in pertinent part, in favor of Savas Trust and against Gerber Trust and Kurtin Trust, awarding Savas Trust a three-eighths interest and Gerber Trust and Kurtin Trust a five-eighths interest in the real property; against Korinth and in favor of Gerber Trust and Kurtin Trust on Korinth's claim of quiet title; against Gerber Trust and Kurtin Trust in favor of Savas Trust, Tom Savas, Pat Savas, and Athena Savas; and against Chris Savas, Mid City, and Daniel Kupper in favor of Gerber Trust and Kurtin Trust. The judgment awarded Savas Trust attorney fees and costs from Gerber Trust and Kurtin Trust. At a subsequent hearing, the trial court denied Savas Trust and Pat Savas's motion for attorney fees.

In their appeal from the judgment, Gerber Trust and Kurtin Trust challenge that part of the judgment holding that Savas Trust was entitled to a three-eighths interest in the real property, but not "the portion of the Judgment awarding [Gerber Trust and Kurtin Trust] a 5/8 ownership interest in the Subject Property." Gerber Trust and Kurtin Trust contend that the rescission of the settlement agreement and cancellation of the sale of the real property by Korinth to Mid City voided the second deed of trust as to Savas Trust only. Therefore, Gerber Trust and Kurtin Trust contend, the nonjudicial foreclosure sale held pursuant to the second deed of trust did not convey to Savas Trust a three-eighths ownership interest in the real property. Gerber Trust and Kurtin Trust also contend that when the settlement agreement was "'rescinded,'" Savas Trust's three-eighths interest in the real property "was extinguished as a matter of law, before the [nonjudicial foreclosure sale of the real property] occurred, pursuant to the doctrine of 'merger of title' . . . ."

Savas Trust and Pat Savas appeal from the trial court's order denying their motion for attorney fees. Korinth, Athena Savas, Chris Savas, Daniel Kupper, and Mid City did not appeal.

## B. The joint stipulation of facts

A "Joint Stipulation of Facts for Purposes of Trial" (joint stipulation of facts) was lodged with the trial court prior to trial. It stated, in part, as follows. Tom Savas and Pat

3

Savas are married and have two children, Chris Savas and Athena Savas. Tom, Pat, Chris, and Athena are referred to collectively as the Savas Family. The Savas Family is the sole shareholder of Korinth, which acquired title to the real property "subject to" a purchase money deed of trust in favor of Broadway Federal Bank. In 2004, a quitclaim deed "was executed which purported to convey the [real property] from Korinth to [Mid City]." Mid City is owned by Chris Savas and Daniel Kupper.

In 2004, Korinth filed a complaint against Mid City, Chris Savas, and Daniel Kupper, seeking cancellation of the quitclaim deed and monetary damages (*Korinth v. Mid City et al.* (Super. Ct. L.A. County, 2008, No. BC325764)) (the underlying action). The complaint alleged that Chris Savas "illegally attempted to transfer the [real property] to Mid City via the Quitclaim Deed, without any consent or authority from the president and authorized representative of Korinth, Athena Savas."

In May 2007, the parties reached a settlement in the underlying action, the material terms of which were recorded before the trial court as follows. "a. Title to the [real property] was to be quieted in favor of Mid-City, and Korinth/Savas Family was to quitclaim any interest they had in the [real property] to Mid-City; [¶] b. An escrow was be [*sic*] opened, in which Korinth would be deemed the seller of the [real property] and Mid-City would be deemed the buyer, and into which $500,000 was to be loaned/deposited by [Gerber Trust and Kurtin Trust], to be secured by a deed of trust in second lien position against the [real property]; [¶] c. At the close of escrow, from the $500,000 to be loaned/deposited into escrow by [Gerber Trust and Kurtin Trust], $250,000 (less 36% of the title and escrow fees) was to be released to Korinth/Savas Family, with Mid-City/Kupper receiving the other $250,000 (less 64% of the title and escrow fees); [¶] d. The second deed of trust securing [Gerber Trust and Kurtin Trust's] $500,000 loan would be in the total amount of $850,000, and would also secure a promissory note in the amount of $350,000 to be executed by Mid-City/Kupper in favor of Korinth/Savas Family; [¶] e. Remaining attorneys' fees owed by Kupper/Mid-City to their attorneys in the amount of $75,000 would be secured by a deed of trust in third lien

4

position against the [real property]; and [¶] f. Chris Savas would release any interest he had in both Korinth and Mid-City."

The parties agreed to draft and sign a written settlement agreement that reflected the agreed-upon terms. On July 2, 2007, the parties executed a written settlement agreement which provided that Gerber Trust and Kurtin Trust "were to make a $500,000 loan secured by a deed of trust against the [real property]." Gerber Trust and Kurtin Trust were not signatories to the written settlement agreement or parties to the underlying action.

Subsequently, Tom Savas, Pat Savas, Athena Savas, Chris Savas, and Daniel Kupper opened escrow with First American Title Company and signed escrow instructions incorporating the terms of the written settlement agreement. Gerber Trust and Kurtin Trust deposited $500,000 into escrow. "The Loan was secured by a deed of trust executed by Mid-City in second lien position against the [real property] (the 'Second Trust Deed'), behind the First Trust Deed in favor of Broadway [Federal Bank]. The Second Deed of Trust was recorded on July 9, 2007, . . . with the Los Angeles County Recorder's Office. [Fn. omitted.] [¶] . . . The Second Deed of Trust [was] in the amount of $800,000, and purport[ed] to secure the $500,000 Loan made by the [Gerber Trust and Kurtin Trust] and a $300,000 promissory note executed by Mid-City/Kupper in favor of Korinth/the Savas Trust."

"[After] escrow closed, Korinth/Savas Family asserted that there was a discrepancy between the settlement put on the record before [the trial court] and the parties' written [s]ettlement [a]greement. Specifically, Korinth/Savas Family asserted that in the settlement put on the record before [the trial court], the promissory note to be executed by Mid-City in favor of Korinth/Savas Family was to be in the amount of $350,000, while the written [s]ettlement [a]greement provided that the promissory note to be executed by Mid-City in favor of Korinth/Savas Family was in the amount of $300,000."

Thereafter, Korinth "recommenced litigation" of the underlying action. Mid-City's and Chris Savas's answers to Korinth's complaint were stricken and their defaults

5

were entered. Korinth submitted "an Amended Accounting After Rescission" to the trial court. "The Judgment signed by Judge Chirlin on August 29, 2008, canceled the Quitclam [*sic*] Deed which transferred the Subject Property from Korinth to Mid City, awarded Korinth monetary damages against Chris Savas in the amount of $500,000 and, in accordance with the Amended Accounting, monetary damages against Daniel Kupper in the amount of $225,197.00" (the underlying judgment).

"From in or about August 2007 to in or about March 2008, payments were made in accordance with the terms of the Loan secured by the Second Deed of Trust. However, beginning on or about April 15, 2007, the payments ceased. [¶] . . . On or about July 1, 2008, [Gerber Trust and Kurtin Trust] caused to be recorded a Notice of Default and Election to Sell under the Second Deed of Trust. [¶] . . . On or about November 12, 2008, a Notice of Trustee's Sale on the [real property] pursuant to the Second Deed of Trust was recorded. [¶] . . . In December of 2008, Korinth filed for Chapter 11 Bankruptcy. [¶] . . . On April 14, 2009, the United States Trustee's Office's Motion to Dismiss Korinth's Bankruptcy was granted by the Bankruptcy Court. [¶] . . . On April 22, 2009, a trustee's sale (the 'Trustee's Sale) [*sic*] pursuant to the Second Deed of Trust was held. [¶] . . . [Gerber Trust and Kurtin Trust] were the successful bidders at the Trustee's Sale." In a footnote, the joint statement of stipulated facts concluded as follows. "As part of this lawsuit, Korinth is seeking to set aside [Gerber Trust and Kurtin Trust's] title to the [real property] acquired at the Trustee's Sale. Therefore, the parties stipulate only that [Gerber Trust and Kurtin Trust] were the successful bidders at the Trustee's Sale. Whether the Trustee's Sale held pursuant to the Second Deed of Trust was valid, and whether or not [Gerber Trust and Kurtin Trust] acquired valid title to the [real property] as a result of the Trustee's Sale held pursuant to the Second Deed of Trust, will be determined by the trier of fact."

### C. Testimony and exhibits introduced at trial

At the trial of the instant matter, the trial court considered testimony, the joint stipulation of facts, and a joint stipulation of exhibits. The evidence presented to the trial court was as follows.

6

Pat Savas is the trustor and trustee of Savas Trust. The beneficiaries of the Savas Trust are Pat Savas's sister and grandson. Tom Savas is not a beneficiary or trustee of Savas Trust. Pat Savas testified that Savas Trust was "separate property" and that Tom Savas had no "share in it." Pat Savas testified that it was her understanding that pursuant to the settlement agreement, Savas Trust "would be getting a portion of the promissory note that was going to be recorded on the property." Pat Savas testified that the $300,000 promissory note was "made payable" to Savas Trust because Tom Savas "was the owner of Korinth and we felt that we should share the money and so, therefore [the money] was to be put into my trust." Tom Savas testified that he had "no part of" Savas Trust, which was set up by an attorney. He testified that only Savas Trust had the right to the proceeds from the $300,000 promissory note.

A recorded fictitious deed of trust (which is a multi-page form deed of trust containing various obligations incorporated by reference in short form deeds of trust), states, "A. To protect the security of this Deed of Trust, Trustor agrees: [¶] . . . [¶] (3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed. [¶] (4) . . . [¶] Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee . . . may . . . appear in and defend any action or proceeding purporting to affect the security hereof . . . and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees. [¶] . . . [¶] B. It is mutually agreed: [¶] . . . [¶] (5) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right to . . . sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine."

7

The second deed of trust does not contain an attorney fees provision, but contains a provision incorporating subdivisions A and B of the fictitious deed of trust. A rider to the second deed of trust states, "Any beneficiary may commence a foreclosure action and all beneficiaries under the $300,000 note and the $500,000 note shall share in the costs and proceeds equally after satisfying the First Mortgage."

The $500,000 promissory note payable to Gerber Trust and Kurtin Trust and secured by the second deed of trust states, "If any attorney is engaged by Lender to enforce or construe any provision of this Note or the Deed of Trust as a consequence of any default or event of default, with or without the filing of any legal action or proceeding, then Borrower shall immediately pay on demand all attorneys' fees and all other costs incurred by Lender . . . ." The $300,000 promissory note contains the same attorney fees clause.

The purported settlement agreement states, "In any action to enforce this Agreement, or in any action arising out of this Agreement, whether by way of judicial, arbitration, mediation or administrative proceedings or otherwise, the prevailing party in such proceeding shall be entitled to recover reasonable costs and attorneys' fees from the non-prevailing party."

The underlying judgment, filed on August 29, 2008, states, "The revised written settlement agreement dated July 2, 2007 is rescinded."

## D. The statement of decision

The trial court issued a statement of decision, which was filed on May 6, 2011. The statement of decision provided, in part, as follows.

Chris Savas forged a quitclaim deed which purported to convey the real property from Korinth to Mid City. Korinth and Savas Trust filed a quiet title action against Mid City, Chris Savas, and Daniel Kupper and subsequently reached a settlement, the terms of which were recited "in open court and on the record."

Korinth's attorney, Lawrence Levine, prepared a draft settlement agreement (draft settlement agreement) that the parties agreed conformed to the terms of the oral settlement agreement. In Levine's absence, Chris Savas persuaded Tom Savas, Pat

8

Savas, and Athena Savas to sign a settlement agreement (purported settlement agreement) that, unbeknownst to them, Chris Savas had drafted. A material difference between the draft settlement agreement and the purported settlement agreement was that the "[draft settlement agreement] provided for [Savas Trust] to receive a $350,000 note from Mid [City] secured by the Joint Second Deed of Trust with Kurtin Family Trust in the combined amount of $850,000. The [purported settlement agreement] provided for [Savas Trust] to receive only a $300,000 note from Mid [City] secured by the Joint Second Deed of Trust with Kurtin Family Trust in the combined amount of $800,000."

The terms of the second deed of trust were approved by Gerber Trust and Kurtin Trust. The second deed of trust provided, among other things, that it "would be owned jointly" by Gerber Trust and Kurtin Trust and Savas Trust; "'[n]one of the Beneficiaries shall have any right superior to the others.' [Fn. omitted.]"; "[e]ach owner would share proportionately to their percentage ownership interest in the proceeds realized from the sale of the [real property]"; and "[e]ach party shall have a right to distribution 'proportionate to their original loan balance, and adjusted for accounting. This language means that the [Savas Trust] would be entitled to 3/8th interest in the [real property] and that [Gerber Trust and Kurtin Trust] would be entitled to a 5/8th interest in the [real property] upon a non-judicial foreclosure by either party."

The statement of decision held that the purported settlement agreement was "void *ab initio*" and therefore the escrow instructions were "void" because they were signed "under mistake" based on the purported settlement agreement. The purported settlement agreement and escrow instructions conveyed no property interest to Mid City. Further, Gerber Trust and Kurtin Trust did not rely on the purported settlement agreement or escrow instructions in making the loan to Mid City and relied "solely upon the title insurance policy for purposes of insuring good title. Therefore, there is no legal argument which [Gerber Trust and Kurtin Trust] can make based on estoppel or detrimental reliance."

"[Gerber Trust and Kurtin Trust] should not be held accountable for the misdeeds of Chris Savas and Daniel Kupper nor for the [purported settlement agreement]."

9

Therefore, the second deed of trust was recorded properly and became a valid lien on the real property. "Furthermore, even though Mid City never had any legal interest in the [real property], and normally Mid City could not legally place a lien on the [real property] by signing the Joint Second Deed of Trust in favor of [Gerber Trust and Kurtin Trust and Savas Trust], because Korinth signed the escrow instructions and the Forged Deed of Trust, Korinth encumbered the [real property] with the Joint Second Deed of Trust." The trustee's sale legally transferred title from Korinth to Gerber Trust and Kurtin Trust in joint ownership with Savas Trust.

The statement of decision held that the trial court in the underlying action did not rule on the validity of the second deed of trust. It noted that Tom Savas testified that "he intended to give [Savas Trust] the $300,000 (actually $350,000) promissory note from Mid City, as a distribution of its ownership interest. . . . Indeed the transfer to [Savas Trust] of part interest in the Joint Second Deed of Trust, insured that Pat Savas as beneficiary of [Savas] Trust would have economic security." Further, Gerber Trust and Kurtin Trust did not prove that Savas Trust is the alter ego of Tom Savas and Pat Savas, or that Korinth is the alter ego of Tom Savas and Pat Savas.

The statement of decision determined that the application of the doctrine of merger, as proposed by Gerber Trust and Kurtin Trust, "would result in an unfair windfall to [Gerber Trust and Kurtin Trust]" and would be unfair to Savas Trust. Gerber and Kurtin did not present any evidence showing that inequity resulted from permitting Savas Trust to continue to own its three-eighths interest in the second deed of trust, and subsequent to the trustee's sale, in the real property. Savas Trust's ownership interest "in the Joint Second Deed of Trust is not invalidated by the doctrine of merger. [Gerber Trust and Kurtin Trust] incompletely argue that somehow the [Savas Trust's] ownership of the $300,000 note was 'merged' with the ownership of the [real property] by Korinth . . . because all parties were owned by each other. In other words, [Gerber Trust and Kurtin Trust] are arguing that Tom Savas, Pat Savas, Korinth, and [Savas Trust] are one and all the same. It is clear from the evidence that [Savas Trust] is independent and not under the control or ownership of Tom Savas. It is also clear from the evidence that

10

Korinth is independent and not under the control or ownership of Pat Savas. [¶] However, even if [Gerber Trust and Kurtin Trust] were correct, the doctrine of 'merger' is not effective. Whether or not a merger occurs is a factual question and depends upon the intent of the person in whom the interests are united. [Citation.] Here neither [Savas Trust] nor Pat Savas nor Tom Savas seek merger. Even in the absence of expressed intent, implied intent to avoid merger when all the circumstances show that the interest of the person in whom the two estates have been united would be best served by keeping them separate. [Citation.] [¶] A merger is held not to occur if a junior lien intervenes between the ownership and security interests that are allegedly united. [Citation.] In other words, since Broadway Federal owns a first trust deed which is secured on the property between the fee ownership interest and the Joint Second Trust Deed, even if Tom Savas owned both the $300,000 note secured by the Joint Second Trust Deed and the fee interest in the [real property], the existence of Broadway Federals' [*sic*] First Deed of Trust blocks merger (and also therefore the removal of the $300,000 note)."

Finally, the statement of decision held that Korinth was not entitled to judgment on its quiet title claim. It also held that the "non-judicial foreclosure sale based on the Joint Second Deed of Trust was legal, transferring title from Korinth to [Savas Trust] (three-eighths) and [Gerber Trust and Kurtin Trust] (five-eighths)." The statement of decision stated, "[Savas Trust] shall recover its Attorney's fees and costs from [Gerber Trust and Kurtin Trust], in an amount to be determined by the Court upon noticed motion and cost bill."

**E. Motion for attorney fees**

Savas Trust and Pat Savas filed a motion for attorney fees, arguing that they were entitled to attorney fees pursuant to Civil Code section 1717 because the promissory notes contained a provision allowing the prevailing party to recover attorney fees and the second deed of trust incorporated a "universal Deed of Trust" which allowed the prevailing party to recover attorney fees. The trial court heard and denied Savas Trust and Pat Savas's motion for attorney fees, holding that "both the deed of trust and promissory notes provide that attorneys' fees may be awarded to the beneficiaries and

11

lenders. However, such attorneys' fees are payable only by the Trustor or the Borrower, not by a fellow beneficiary or a fellow lender. [¶] . . . [¶] . . . Gerber and Kurtin were not the trustors as stated in the Deed of Trust, and they did not step into the shoes of the trustor through an assignment or other instrument. Instead, Gerber and Kurtin were also listed as Beneficiaries under the Deed of Trust. Furthermore, Gerber and Kurtin were not even listed on the promissory note that would entitle Savas to a recovery of fees, and there is no evidence that Gerber or Kurtin stepped in the shoes of the lender, Mid City Development."

These appeals followed.

## DISCUSSION

### A. Standard of review

A trial court's decision based on undisputed facts is subject to de novo review by the appellate court. (*Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 57.) "The substantial evidence standard of review applies to both express and implied findings of fact made by the court in its statement of decision." (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 501.) "Under the substantial evidence standard of review, our review begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the trial court's factual determinations." (*Ibid*.)

We apply a de novo review to that part of the trial court's decision based on the undisputed facts of the joint stipulation of facts and a substantial evidence of review to that part of the decision in which the court made factual findings based on testimony and evidence at trial.

### B. The rescission of the purported settlement agreement did not void the second deed of trust as to Savas Trust

Gerber Trust and Kurtin Trust contend that the rescission of the purported settlement agreement and cancellation of the quitclaim deed voided the second deed of trust as to Savas Trust only. We disagree because the earlier settlement had nothing to do with the rights of the five-eighths owners, who received the benefit of their bargain.

12

Gerber Trust and Kurtin Trust contend that *Korinth* agreed to sell the real property to Mid City, in exchange for, among other things, the $300,000 promissory note. They claim that when the purported settlement agreement was rescinded, *Korinth's* $300,000 promissory note was rescinded, and therefore the note was no longer secured by the second deed of trust. To reach this conclusion, they argue that Savas Trust "was designated as the 'payee' of the promissory note to be executed by Mid City, solely as the 'nominee' of Korinth." They contend that Savas Trust did not loan $300,000 to Mid City in exchange for the promissory note and that any rights held by Savas Trust to the $300,000 promissory note and the second deed of trust "were all as a result of the [purported] settlement" agreement. Therefore, they assert, *Korinth* "obtained" the $300,000 promissory note "from Mid City as part of the [purported settlement agreement]."

Gerber Trust and Kurtin Trust then cite the general rule that when an agreement has been rescinded, the parties must be restored to their former positions by requiring each to return whatever consideration has been received, relying on *Nmsbpcsldhb v. County of Fresno* (2007) 152 Cal.App.4th 954, 959–960. Gerber Trust and Kurtin Trust thus contend that when the purported settlement agreement was rescinded and the quitclaim deed was canceled, Korinth was restored to its original position in that it maintained title to the real property—but at the same time it could not "retain" the rights to the "$300,000 Promissory Note that it had obtained from Mid City as part of the settlement . . . ." Gerber Trust and Kurtin Trust also cite *IMO Development Corp. v. Dow Corning Corp.* (1982) 135 Cal.App.3d 451 for the proposition that a contract entered into under duress must be rescinded in its entirety because a party "'may not retain the rights under it which he deems desirable and repudiate the remainder [citation].'" (*Id*. at p. 458, italics omitted.) Gerber Trust and Kurtin Trust argue that "Korinth could <u>not</u> rescind only the portion of the Settlement Agreement which transferred title to the [real property] to Mid City, while at the same time retaining the $300,000 Promissory Note it received from Mid City."

13

We disagree with Gerber Trust and Kurtin Trust's logic. First, while Gerber Trust and Kurtin Trust's $500,000 loan in exchange for the promissory note and second deed of trust were referred to in the purported settlement agreement, Gerber Trust and Kurtin Trust were not parties to the purported settlement agreement and did not act in reliance on it. As the trial court stated, Gerber Trust and Kurtin Trust did not rely on the purported settlement agreement or escrow instructions in making the loan to Mid City and relied "solely upon the title insurance policy for purposes of insuring good title." Thus, although the purported settlement agreement was rescinded and the quitclaim deed that conveyed the real property from Korinth to Mid City was canceled, Gerber Trust and Kurtin Trust's rights were not affected because the trial court held that the second deed of trust was valid, and Korinth did not appeal this ruling. Subsequently, when Korinth failed to make payments on Gerber Trust and Kurtin Trust's $500,000 loan, Gerber Trust and Kurtin Trust were entitled to, and did, hold a trustee's sale pursuant to the second deed of trust. In sum, they got the benefit of their bargain.

The rescission of the purported settlement agreement likewise did not affect Savas Trust's three-eighths interest in the real property. Contrary to Gerber Trust and Kurtin Trust's assertions, the evidence supports the trial court's conclusion that Savas Trust and Korinth were separate entities. Pat Savas was the trustor and trustee of Savas Trust. Tom Savas was not a beneficiary or trustee of Savas Trust and did not have the right to receive payments under the $300,000 promissory note. Savas Trust, and not Korinth, was the holder and beneficiary of the $300,000 promissory note.

Nevertheless, Gerber Trust and Kurtin Trust assert that "Korinth *nominated* the Savas Trust as the 'payee' on the $300,000 Promissory Note, and the beneficiary of the Second Deed of Trust." (Italics added.) They claim that "the rights accruing pursuant to the $300,000 Promissory Note, and the Second Deed of Trust securing the $300,000 Promissory Note, belonged to Korinth, and not the Savas Trust." In support of their argument that Savas Trust was the nominee of Korinth, Gerber Trust and Kurtin Trust miscite the joint stipulation of facts, which states at paragraph 10.d., "The second deed of trust securing [Gerber Trust and Kurtin Trust's] $500,000 loan would be in the total

14

amount of $850,000, and would also secure a promissory note in the amount of $350,000 to be executed by Mid-City/Kupper in favor of Korinth/Savas Family." In their opening brief on appeal, Gerber Trust and Kurtin Trust replaced the term "Korinth/Savas Family" with the term "Korinth, *or its 'nominee(s).'*" (Italics added.)

Gerber Trust and Kurtin Trust's contentions fail. We conclude that Gerber Trust and Kurtin Trust's reliance on the general rules that parties to a rescinded contract must be restored to their original position and a contract entered into under duress must be rescinded in its entirety, is misplaced because, as noted, they got the benefit of their bargain and were in no way affected by the rescission of the purported settlement agreement. Their attempts to void Savas Trust's interest in the real property on those grounds fail.

Further, Gerber Trust and Kurtin Trust contend that when the purported settlement agreement among Korinth, Savas, and others was "'rescinded,'" Savas Trust's three-eighths interest in the real property "was extinguished as a matter of law, before the Trustee's Sale occurred, pursuant to the doctrine of 'merger of title.'" Gerber Trust and Kurtin Trust cite *Sheldon v. La Brea Materials Co.* (1932) 216 Cal. 686 for the proposition that "'[w]hen a greater and lesser estate coincide and meet in one and the same person, in the same right without any intermediate estate, the latter is in law merged in the greater.'" (*Id*. at p. 689.) But Gerber Trust and Kurtin Trust's argument based on the doctrine of merger is unavailing. As previously stated, the evidence supports the trial court's conclusion that Korinth and Savas Trust are separate entities. Further, Gerber Trust and Kurtin Trust have shown no evidence of Korinth's and Savas Trust's intent to merge their interest in the real property. (*Kolodge v. Boyd* (2001) 88 Cal.App.4th 349, 362 ["While it is presumed that there is no merger where merger would work an inequity, the presumption against merger can be overcome by evidence that the parties intended a merger upon the union of two or more estates, and as to this question the person claiming merger has the burden of proof"].) And even if Korinth and Savas Trust were the same entity and had the intent to merge their interests, the doctrine of merger does not apply because Broadway Federal Bank's first trust deed was an intermediary estate between

15

Korinth's ownership interest and Savas Trust's second deed of trust. (*Anglo-Californian Bank v. Field* (1905) 146 Cal. 644, 653 [equity will prevent a merger where there is a junior lien].)

Finally, we reject Gerber Trust and Kurtin Trust's argument that because Gerber Trust and Kurtin Trust were the winning bidders at the trustee's sale, they acquired the entire ownership interest in the real property. The rider to the second deed of trust states, "Any beneficiary may commence a foreclosure action and all beneficiaries under the $300,000 note and the $500,000 note shall share in the costs and proceeds equally after satisfying the First Mortgage."

## C. Pat Savas and Savas Trust are not entitled to attorney fees

### 1. *Applicable statutes and standard of review*

"'Whether a party to litigation is entitled to recover costs is governed by Code of Civil Procedure section 1032, which provides, in subdivision (b), that "[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." For the purpose of determining entitlement to recover costs, Code of Civil Procedure section 1032 defines "prevailing party" as including, among others, "a defendant in whose favor a dismissal is entered." (Code Civ. Proc., § 1032, subd. (a)(4).)' Also, a defendant against whom the plaintiff does not recover any relief is a prevailing defendant. [Citation.] [¶] Under Code of Civil Procedure section 1033.5, subdivision (a)(10), attorney fees are allowable as costs under Code of Civil Procedure section 1032, 'when authorized by any of the following: [¶] (A) Contract. [¶] (B) Statute. [¶] (C) Law.'" (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 143.)

Civil Code section 1717, subdivision (a) provides, in pertinent part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

16

"On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." (*Carver v. Chevron U.S.A., Inc.*, *supra*, 97 Cal.App.4th at p. 142.) "Stated another way, to determine whether an award of attorney fees is warranted under a contractual attorney fees provision, the reviewing court will examine the applicable statutes and provisions of the contract. Where extrinsic evidence has not been offered to interpret the [contract], and the facts are not in dispute, such review is conducted de novo." (*Ibid*.)

### 2. Savas Trust and Pat Savas are not entitled to attorney fees based on the purported settlement agreement

Savas Trust and Pat Savas argue they are entitled to attorney fees based on the purported settlement agreement. We disagree.

We first note that Savas Trust and Pat Savas argued in their motion below that they were entitled to attorney fees pursuant to Civil Code section 1717 because the promissory notes secured by the second deed of trust "allow the prevailing party in the action to recover its attorney's fees," and the second deed of trust incorporated the fictitious deed of trust, which allows the prevailing party to recover attorney fees. On appeal, they raise new theories which we will address because they are questions of law applied to undisputed facts in the record. (*In re Marriage of Moschetta* (1994) 25 Cal.App.4th 1218, 1227 [party may not raise new contention on appeal unless new point of law is decided after trial "or where the new theory 'presents a question of law to be applied to undisputed facts in the record'"].)

Savas Trust and Pat Savas argue they are entitled to attorney fees either as a third party beneficiary to the "settlement agreement," a signatory to the escrow instructions that incorporate the "settlement agreement," or as a third party beneficiary to the escrow instructions that incorporate the "settlement agreement," citing *Pacific Preferred Properties, Inc. v. Moss* (1999) 71 Cal.App.4th 1456 (*Pacific*). Savas Trust and Pat Savas's reliance on *Pacific* is misplaced. In *Pacific*, a real estate purchase contract

17

prepared by the broker, who was named in the contract and was both the listing and selling agent, specifically stated, "In any legal action, proceeding or arbitration arising out of this agreement, whether instituted by or against the Buyer or Seller, or the Brokers named herein, the prevailing party(s) shall be entitled to reasonable attorney's fees and costs." (*Id*. at p. 1460.) Thus, the Court of Appeal held that the company that operated the brokerage firm was included "unambiguously" within the attorney fees provision and rejected the trial court's "[attempt] to evade the implication of party status arising from this salient consideration by characterizing the broker as an intended third party beneficiary of the buyer-seller contract." (*Id*. at p. 1462.)

The purported settlement agreement states, "In any action to enforce this Agreement, or in any action arising out of this Agreement, whether by way of judicial, arbitration, mediation or administrative proceedings or otherwise, the prevailing party in such proceeding shall be entitled to recover reasonable costs and attorneys' fees from the non-prevailing party." But Gerber Trust and Kurtin Trust were not signatories to the purported settlement agreement. And *Pacific* does not hold, as Savas Trust and Pat Savas claim, that third party beneficiaries are entitled to attorney fees; even so, we do not agree with their conclusion that Gerber Trust and Kurtin Trust were third party beneficiaries to the purported settlement agreement. Also, their action for quiet title, breach of contract and specific performance against Gerber Trust and Kurtin Trust was not an action to enforce the purported settlement agreement or arising out of the purported settlement agreement. Accordingly, Savas Trust and Pat Savas's arguments fail.

### 3. *Savas Trust and Pat Savas are not entitled to attorney fees under equitable principles of "'practical liability'"*

Savas Trust and Pat Savas argue that they are entitled to attorney fees under equitable principles of "'practical liability.'" Again, we disagree.

Savas Trust and Pat Savas argue that "[t]he Fictitious Deed of Trust, which was incorporated into the actual recorded Deed of Trust allow Gerber (Beneficiary) to collect attorney fees from Mid City (Trustor) in the event that Mid City (Trustor) breaches any terms of the Deed of Trust" and the promissory notes secured by the second deed of trust

18

allow Gerber Trust and Kurtin Trust to collect attorney fees from Mid City in the event of Mid City's breach. Thus, Savas Trust and Pat Savas contend, they are entitled to attorney fees because they "had to bring suit to maintain their equity in the property" and Mid City could have collected attorney fees against Gerber Trust and Kurtin Trust in a successful action to stop the foreclosure of the real property; they are similar to the "nonassuming grantee" entitled to attorney fees in S*aucedo v. Mercury Sav. & Loan Assn.* (1980) 111 Cal.App.3d 309 (*Saucedo*). We disagree.

In *Saucedo*, the Court of Appeal held that a nonassuming grantee, which is a purchaser of real property who takes property "'subject to'" an existing loan, is entitled to attorney fees in a successful action to enjoin the trust deed holder from enforcing a due-on-sale clause in the promissory note secured by the deed of trust. (*Saucedo*, *supra*, 111 Cal.App.3d at p. 315.) The court held that "in every case in which the nonassuming grantee has sufficient interest in the property to warrant his resisting foreclosure, he would as a real and practical matter be required to pay reasonable attorney fees incurred by trustee and/or beneficiary should they prevail in the action to prevent foreclosure. [¶] While the nonassuming grantee would not have been personally liable for payment of attorney fees under the note and deed of trust, the trustee and/or beneficiary would have been entitled to attorney fees under the provisions of the deed of trust had they prevailed, and these fees would have become part of the debt secured by the deed of trust. To prevent foreclosure of his interest, the nonassuming grantee would have had to pay off the secured debt, including the attorney fees, by refinancing or otherwise. [Citations.] This practical 'liability' of the nonassuming grantee is sufficient to call into play the remedial reciprocity established by Civil Code section 1717." (*Saucedo*, *supra*, at p. 315.)

Savas Trust and Pat Savas are not in a position similar to that of a nonassuming grantee who, although not personally liable for payment of attorney fees under the note and deed of trust, would have to pay off the debt secured by the trust deed, *which includes attorney fees*, to prevent foreclosure of his interest. Thus, Gerber Trust and Kurtin Trust's right to attorney fees against Mid City based on a breach of the $500,000

19

promissory note and second deed of trust does not confer upon Savas Trust and Pat Savas the right to attorney fees in its action against Gerber Trust and Kurtin Trust.

Accordingly, we conclude Savas Trust and Pat Savas are not entitled to attorney fees under equitable principles of "'practical liability.'"

### 4. *Savas Trust is not entitled to attorney fees as a "third party beneficiary" to the $500,000 promissory note secured by the second deed of trust*

Savas Trust contends it is entitled to attorney fees as a "third party beneficiary" to the $500,000 promissory note secured by the second deed of trust. We disagree.

Savas Trust cites *Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375 (*Real Property*) for the proposition that Savas Trust is an intended third party beneficiary to the $500,000 promissory note secured by the second deed of trust. In that case, the City of Pasadena (City) and BWC Development Corp. (BWC) entered into a lease for the development of a parking garage and movie theater. The lease provided that a prevailing party would be entitled to attorney fees in an action brought by either party under the lease. Real Property Services Corp. (RPS) was not a signatory to the lease, but the lease expressly provided for RPS to be the sublessee who would operate the movie theater. After the construction project was abandoned and the City and BWC terminated the lease, RPS sued the City for breach of contract and requested attorney fees. The Court of Appeal stated, "A party is entitled to recover its attorney fees pursuant to a contractual provision only when the party would have been liable for the fees of the opposing party if the opposing party had prevailed. Where a nonsignatory plaintiff sues a signatory defendant in an action on a contract and the signatory defendant prevails, the signatory defendant is entitled to attorney fees only if the nonsignatory plaintiff would have been entitled to its fees if the plaintiff had prevailed." (*Id*. at p. 382.) The court noted, "It is settled law that 'if a lessor has expressly agreed to a sublease, the sublessee is a third party beneficiary to the implied covenant of quiet enjoyment in the original lease and has the right to go directly against the lessor for its breach.' [Citation.] Where there is a sufficient nexus between the lessor and sublessee, a nonsignatory sublessee is entitled to enforce an attorney fee provision in the lease as a third party beneficiary

20

against a signatory landlord. [Citations.]" (*Id*. at p. 383.) The court determined that a nexus between the City and RPS existed because the lease expressly provided for RPS to be the sublessee who would operate the theater and that RPS was entitled to proceed against the City for breach of the lease. Thus, had RPS been successful, the City would have been liable for costs and attorney fees.

But Savas Trust does not establish that it was a third party beneficiary as contemplated under *Real Property*. In support of its argument that it was a third party beneficiary of the $500,000 promissory note secured by the second deed of trust, Savas Trust merely argues that the $500,000 promissory note "references" Savas Trust's $300,000 promissory note and that Savas Trust and Gerber Trust and Kurtin Trust are "named as Beneficiaries in that Deed of Trust." But Savas Trust is not like the sublessee in *Real Property*, who was a third party beneficiary to the implied covenant of quiet enjoyment in the original lease and had the right to sue the lessor for breach. (*Real Property*, *supra*, 25 Cal.App.4th at p. 383.) Thus, Gerber Trust and Kurtin Trust's right to attorney fees against Mid City based on a breach of the $500,000 promissory note secured by the second deed of trust does not confer upon Savas Trust the right to attorney fees in its action against Gerber Trust and Kurtin Trust.

Accordingly, we conclude that Savas Trust is not entitled to attorney fees as a "third party beneficiary" to the $500,000 promissory note secured by the second deed of trust.

**5.** ***Savas Trust and Pat Savas are not entitled to attorney fees under "equitable provisions"***

Savas Trust and Pat Savas urge they are entitled to attorney fees under "equitable provisions." We disagree.

Savas Trust and Pat Savas argue that Gerber Trust and Kurtin Trust filed a cross-complaint alleging that Pat Savas was the alter ego of Savas Trust. Without citation to the record or authority, they contend, "Had Gerber/Kurtin Trust prevailed on its alter ego claim, Pat Savas individually would have been liable to Gerber/Kurtin Trust for its attorney's fees pursuant to the Deed of Trust." But we are not convinced by Savas Trust

21

and Pat Savas's unsupported argument and conclude that Savas Trust and Pat Savas are not entitled to attorney fees under "equitable provisions."

And to the extent Savas Trust and Pat Savas argue they are entitled to attorney fees "based on the July 18, 2011 Judgment which awarded it attorneys' fees," they are incorrect. As stated, attorney fees are allowable as costs under Code of Civil Procedure section 1032, "when authorized by any of the following: [¶] (A) Contract. [¶] (B) Statute. [¶] (C) Law." (Code Civ. Proc., § 1033.5, subd. (a)(10).) Thus, a statement of decision stating that Savas Trust shall recover its attorney fees and costs from Gerber Trust and Kurtin Trust, upon noticed motion and cost bill, cannot be grounds for an award of attorney fees when unsupported as a matter of law, let alone in light of the trial court's subsequent denial of attorney fees.

In addition, Gerber Trust and Kurtin Trust argue that Savas Trust and Pat Savas are not entitled to attorney fees based on "'procedural' defects regarding service of their motion for attorneys' fees." Because we concluded that Savas Trust and Pat Savas are not entitled to attorney fees on substantive grounds, we do not address Gerber Trust and Kurtin Trust's "procedural" argument.

We conclude that Savas Trust and Pat Savas are not entitled to attorney fees because they have not shown the existence of an attorney fees provision in any contract between Gerber Trust and Kurtin Trust on the one hand, and Savas Trust on the other.

## DISPOSITION

The judgment and the order denying attorney fees are affirmed. Each party to bear its own costs on appeal.

NOT TO BE PUBLISHED.

MALLANO, P. J.

We concur:

ROTHSCHILD, J.

JOHNSON, J.